RIKA BRECKENFELDER, ADMINISTRATRIX, ETC., v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Negligence—Railroad companies—Injury at crossing—Contributory negligence—Damages—Evidence.*

1. In this case it is held that the ordinary method of using railroad tracks is not such that one familiar with such use may ordinarily expect one train or cars upon the same track to be closely following another, and that where a person familiar with the surroundings attempted to cross a track, upon the sidewalk, after seeing a train pass over it, and was run over and killed by detached cars which were following said train, it was for the jury to say whether he took that care and caution, under all of the surrounding circumstances, that a prudent man, exercising ordinary caution, should have exercised.

2. In an action against a railroad company under How. Stat. §§ 3391, 3392, for the alleged negligent killing of a husband and father, testimony is admissible showing the number and ages of his children who were dependent upon him for support.

Error to Monroe. (Kinne, J.) Argued January 31, 1890. Decided February 20, 1890.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Weaver & Bean ( Geo. C. Greene* and *O. G. Getzen-Danner,* of counsel), for appellant.

*C. A. Golden* and *G. M. Landon,* for plaintiff.

CHAMPLIN, C. J. John Breckenfelder, the husband of plaintiff, was killed on August 29, 1888, at the intersection of the defendant's road with Adams street, in the city of Monroe, by being run over by the cars of defendant. The circumstances under which the accident happened are little in dispute or doubt. Whatever contradiction there was in the testimony, or inferences to be drawn therefrom, were for the jury to determine, and raise no question of law for the court. The case was fairly submitted to the jury, under proper instructions as to the law which governed the case, and the only question of law which we can pass upon is whether their was testimony in the case in any degree tending to show defendant's negligence; and, if so, whether there was testimony which tended to show that the decedent was in the exercise of reasonable and proper care on his part to prevent the accident, and that it occurred without contributory negligence on his part.

The testimony is all returned, and it shows that the time of the accident was near midday, while the deceased and his son were returning to their daily labor. The manner of the accident is described by eye-witnesses. It would not be profitable to the parties or to the profession to narrate the testimony in full. We have examined it carefully, and are of opinion that there was testimony which,

79 MICH.—36.

if believed, tended to show that the defendant was negligent in the manner pointed out in the second and third counts of the plaintiff's declaration, and as a question of fact was properly submitted to the jury.

Whether the deceased was in the exercise of ordinary care, and free from fault, presents a question of the most importance in this case. Those in charge of the engine and cars were engaged in switching. The switches were east of Adams street, which crossed the railroad at about an angle of 45 deg.; the railroad running nearly east and west, and Adams street nearly north-east and south-west. The engine, with two box-cars laden with wheat in front of it, and two cars laden with coal in the rear of it, moved west on the main track, past Adams street, and past the west switch, and stopped. It is claimed on the part of the defense that the intention was to set the two coal-cars upon the switch track, and then return with the wheat-cars to the main track. There was testimony tending to show that those in charge of the engine intended to make a running switch, so as to throw the switch between the box-cars and the engine, and permit the box-cars to pass back on the main track. It is certain, however, that after starting east, towards the switch, and before the train reached Adams street, either by design or otherwise, the two box-cars became detached from the engine, and were separated several feet, when the engine and coal-cars crossed Adams street, and the box-cars were following without a lookout upon the front car, the brakeman on the rear box-car keeping no lookout whatever.

The deceased and his son were proceeding north-easterly along the westerly side of Adams street, and when they nearly reached the railroad they saw the train pass west, with the cars as stated; and when they reached the railroad the engine and coal-cars were proceeding east, and

both father and son crossed to the east side of Adams street, as the engine and cars were passing, the son a few feet in advance. The son continued on east, on defendant's right of way. The father, when he reached the plank sidewalk on the east side of Adams street, which had then been cleared by the engine, turned to travel across the track on the sidewalk, and had taken two or three steps, or had reached about half the distance across the track, when he was struck by the box-cars following the engine, and was run over and killed.

The only negligence or want of care that can be imputed to him is that he did not look west, to see if cars were approaching, before stepping upon the track. Had he done so, he would have seen the box-cars coming, and so near that he could not get across safely. He was neither deaf nor blind, and was in possession of the ordinary faculties of mankind. He was familiar with railroads, and had crossed the road at Adams street for years. He had seen the train pass west. It was passing him, going east, as he was crossing from the west to the east side of Adams street, and had cleared the street as he reached the sidewalk. Was it a natural conclusion, under such circumstances, for a man of ordinary prudence to form, that he might safely cross the track upon the sidewalk as soon as the receding train allowed him to do so, and was he justified, as a prudent man, to act upon such conclusion, without looking to see if there would be danger from other cars following closely after the receding train?

If a person attempts to cross a street upon a crossing in a crowded thoroughfare, the natural impulse would be to pass in the rear of a passing vehicle; but he would be foolhardy and careless if he attempted to do so without looking to see if another team was not approaching in such proximity as to make the attempt dangerous; and if

he should run directly in front of another team, and was injured, he would have himself alone to blame. But is the ordinary method of using railroad tracks such that one familiar with their use may ordinarily expect one train or cars upon the same track to be closely following another? I think not. It was for the jury to say whether he took that care and caution, under all of the circumstances which surrounded him, that a prudent man, exercising ordinary caution, should have exercised. It was proper to submit the question to the jury, and the court did so under instructions as favorable to defend-ant as it was entitled to.

Under the statute giving a right of action in cases of this kind, it was not error to permit testimony showing the number and ages of the children of the deceased who were dependent upon him for support. The plaintiff sues in a representative capacity, for the benefit of all interested, under the statute. How. Stat. §§ 3391, 3392.

The judgment must be affirmed.

MORSE, CAMPBELL, and GRANT, JJ., concurred. LONG, J., did not sit.