# OCTOBER TERM, 1904.

BARNUM *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—
QUESTION FOR JURY.
   In an action against a railroad company for the death of a per-
   son by being struck by an engine backing across a street on
   which deceased was driving in a closed wagon, and attempt-
   ing to cross the track just after a gravel train going in the
   same direction had passed, which the locomotive was backing
   out to assist over a grade, evidence examined, and the ques-
   tion whether deceased was guilty of contributory negligence
   *held* to be for the jury.

2. SAME—NEGLIGENCE—ENGINE FOLLOWING TRAIN.
   *Held* further, that negligence of the defendant cannot be in-
   ferred from the mere fact that the engine immediately fol-
   lowed the train.

Error to Genesee; Wisner, J. Submitted January 12,
1904. (Docket No. 19.) Decided October 4, 1904.

Case by Hartson G. Barnum, administrator of the es-
tate of George F. Nixon, deceased, against the Grand
Trunk Western Railway Company for the alleged negli-
gent killing of plaintiff's intestate. There was judgment
for plaintiff, and defendant brings error. Reversed.

*E. W. Meddaugh* (*Geer & Williams*, of counsel), for
appellant.

*Mark W. Stevens* (*George W. Cook*, of counsel), for
appellee.

HOOKER, J. Deceased rode in a closed wagon upon
the track of defendant's railroad, immediately in front of a
locomotive which was backing to the westward to aid a
(580)

gravel train, which had passed a short time before, in crossing a grade, and was struck by said locomotive, and received injuries therefrom, which caused his death a day or so later.

In this action, brought by his administrator, a verdict and judgment were rendered for the plaintiff for the sum of $8,710.40, and the defendant has brought the case to this court by writ of error.

The negligence relied upon is stated in defendant's brief as follows:

" (1) That it failed to allow a sufficient and reasonable length of time to elapse after the gravel train crossed Beach street before the yard engine attempted to cross; that the yard engine followed the gravel train so closely that travelers and vehicles in the vicinity were not given a reasonable opportunity to cross.

" (2) That it failed to station a competent and vigilant person on the west end of the tender to watch for persons and vehicles approaching the crossing, and to warn them of the approach of the engine.

" (3) That it was its duty to keep a flagman, or maintain the equivalent—that is, crossing bells, etc.—at the Beach street crossing to warn travelers of the approach of trains, and that it failed to perform this duty.

" (4) That it failed to cause the engine bell to ring.

" (5) That the yard engine was running at an excessive rate of speed."

Defendant's counsel requested the court to direct a verdict upon the grounds (1) that the evidence showed that the defendant was not guilty of any negligence that caused the injury; (2) that the plaintiff's intestate was guilty of contributory negligence. These were refused. After the rendition of the verdict defendant's counsel made a motion for a new trial upon several grounds; one of them being that the verdict was contrary to the weight of the evidence. This was denied; reasons being given as required by law.

As this last point requires an examination of the evidence, we will state our conclusions regarding it first, and this will require a somewhat detailed statement of

the testimony.   The defendant's railroad  crosses Beach
street in a direction approximately an easterly and wester-
ly course, and substantially at right angles.   Within a
block east of said street, this railroad  is crossed by the
Pere Marquette Railroad, which also crosses Beach street a

few rods south of defendant's track, going  southwesterly.
There was an electric bell upon the crossing between
the two Pere Marquette tracks, so arranged as to give
warning for both roads, and this was ringing as deceased
approached the track.   A switch, or Y, extended from one
railroad to the other upon the north side of the defendant's
road.   The plat appended shows the situation.

On this Y, some distance east of the street crossing, were two cars; the westerly one being a coal car and the other a box car. From the evidence and from the plat it conclusively appears that, from a point of view 10 feet from defendant's main track, the coal car was north of the line of vision to the eastward for a long distance; and we may also take judicial notice that an engine was visible from a wagon, when some ways farther back from the track, over the coal car, which was much lower than a locomotive, and a finding to the contrary by the jury would have been unwarranted.

The undisputed proof shows that the deceased and a boy were riding in a covered and inclosed bakery wagon, with a small glass in front and open doorways at the sides, and a window just above the seat on each side, through one of which last the locomotive might have been seen, and was seen by the boy, immediately before the deceased drove upon the track; and the boy testified that they saw a freight train going west on defendant's road when they were half a block or more from the crossing, at which time they were crossing the bridge, 150 feet, or thereabouts, west of Lyon street. As he approached the track the boy looked east and saw the engine, and told deceased that an engine was coming. The horse was then walking. When told an engine was coming, deceased's horse was very near the track, and the engine was very close— he thought within 15 feet. The horse got across the track and stopped, or was stopped. The engine struck the wagon and shoved it along, until it caught upon something and tipped over. The boy got out of the front window, the horse ran away, and the man went under the engine. He did not hear any bell ringing. A number of witnesses testified that they heard the bell of the engine ringing, and one or more others testified that they did not hear it.

Several of the witnesses testified that there was a switchman upon the footboard of the engine, and the crew of the locomotive and the switchman himself so

testified. It also appeared that the engine was proceeding westward to make a coupling with the gravel train while in motion, which could hardly have been done in the absence of the switchman.

The switchman testified that he was upon the footboard of the engine, which was proceeding at the rate of 5 or 6 miles an hour. He saw the horse and wagon driving up toward the track, and called to him to look out, gave the engineer the signal, and stepped off; and the engineer reversed his engine and applied his air. This was done as soon as deceased indicated an intention to cross the track, and at a time when the horse was 10 feet from the track.

Kate H. Stevens, walking on the street, saw that there was going to be a collision, and ran behind a billboard so as not to see it. Her attention was attracted by the bell.

Another witness, Powell by name, heard the engine and bell, saw the smoke, and could see the top of the engine over the coal car. He told his brother there was going to be an accident. Before he was struck the engine was reversed, and the drivers were turning the other way, and the witness heard the air set. He also saw the switchman signal to stop.

The evidence relied on to show that the switchman was not there is as follows: The boy says that he did not see any one at the end of the tender. Question by plaintiff's counsel: " Was there anybody there, now? No, sir." Mortimer Phelps, a witness for the defendant, is said to be one who testified that no brakeman was on the engine; but the nearest that he came to it was to say that " when I got there the fireman, *brakeman*, and another man were assisting the man out from under the engine." How this shows that the other man had not been upon the footboard is not very clear, nor do counsel attempt to explain how the brakeman happened to be there, if not one of the crew of the engine. He stated on redirect that he did not see the brakeman on the tender. Ewer was on a Pere Marquette engine, some distance away, and did not see any one standing on the tender, or see any one jump off.

Rothwell, a Pere Marquette switchman, some distance off, saw the engine, but did not see any one on the footboard, and did not see a man jump off. He thought he would have seen it, had it occurred.

Counsel claim that, if the testimony did not conclusively show contributory negligence, the court should have granted the motion for a new trial upon the ground that the verdict was contrary to the evidence; but, as the case must be reversed upon another ground, we do not pass upon the latter question.

The court instructed the jury as follows in regard to defendant's negligence:

"It is for you to determine, under all the circumstances, surroundings, and conditions as they existed at and near the crossing, the buildings and other obstructions that you may find existed, the fact that the Pere Marquette Railroad was in close proximity, under all the facts in the case, whether the defendant railroad was exercising such ordinary and reasonable care and caution as ordinary prudence would dictate in running its engine and tender, backing the same, in such close proximity to the freight train that had just passed Beach street, going in the same direction and on the same track. If you find that the defendant railroad was not exercising such ordinary and reasonable care and caution in its conduct as ordinary prudence would dictate, then I charge you that the defendant railroad would be guilty of negligence, and the plaintiff would be entitled to a judgment, if you find that such negligence of the railroad was the proximate cause of injury, provided you further find that Mr. Nixon was exercising such ordinary and reasonable care and caution as an ordinarily prudent man would exercise under the same circumstances, surroundings, and conditions as you will find they appeared to him at the time.

"The court instructs the jury that the defendant was not required to have a flagman stationed on Beach street where the accident happened, and the plaintiff cannot recover in this case for failure to have a flagman stationed there.

"The court instructs the jury, from the evidence in this case, they must find that the speed of the train at the time of the accident did not exceed six miles an hour. In

speaking of the train, that refers to the engine and tender. And the court further instructs the jury that six miles an hour was not an excessive rate of speed, and did not, as an isolated circumstance, constitute negligence on the part of the defendant."

This was in effect allowing the jury to find that it was negligent for the defendant to permit its locomotive to follow its train at so short a distance and time.

We have held in the case of *Breckenfelder* v. *Railway Co.*, 79 Mich. 563 (44 N. W. 957), that we could not say as a matter of law that one going upon a track immediately after a portion of a train had passed, without looking to see if it was closely followed by another car or cars, was guilty of contributory negligence; but it was for the jury to determine whether one injured under such circumstances could be said to have used ordinary care, and to be, therefore, free from contributory negligence. We are of the opinion that the same rule should be applied here; but it does not follow that the defendant was guilty of negligence from the mere fact of sending its engine immediately after its train. If it may use a locomotive to push its trains over the grade, it must either couple it to the train before it starts, or have the right to follow at a constantly diminishing distance until it overtakes the train. If we were to say it should couple only to a stationary train, the engine must follow the train at a short interval, unless we are to require delay, after the train stops; and if we were to say that, it would not help the matter, for few persons would expect an engine or train to run up close to a stationary train. Safe railroading is often a matter of minutes, sometimes seconds, and it is not for juries or courts to determine what good or bad railroading requires, from their own notions, or from the fact that an accident has happened under certain conditions. It was not proper to say that the jury might find negligence from the mere fact that the engine followed the train.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred with HOOKER, J.

GRANT, J.   I concur in the result reached by my Brother HOOKER.   I think that upon this record there is no evidence of any negligence on the part of the defendant, and I think it is conclusively established that the deceased was guilty of contributory negligence.

For these reasons, and for the further reason that no different state of facts can, in my judgment, be made to appear upon a new trial, I think none should be awarded.