MORGAN *v.* PERE MARQUETTE RAILROAD CO.

1. RAILROADS — CROSSING — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

Ordinarily when a traveler drives upon a railway track without stopping to listen, where his view is obstructed, and in consequence thereof he is injured, he is guilty of contributory negligence, but the rule that he shall stop is not imperative under all circumstances.

2. SAME—OPERATION OF TRAINS.

Under testimony tending to show that plaintiff was struck by a train which was operated without lights, and with the engine running backwards, at a rate of speed in violation of a city ordinance, with no lookouts; that plaintiff before crossing the track stopped his horse to a very slow walk and looked and listened, the question of contributory negligence was for the jury.

3. SAME—SIGNALS.

Travelers upon the highway have a right to assume that trains will be operated in the usual manner and that the customary warnings will be given.

4. SAME—STATUTES—OPERATION OF TRAINS.

Although the provisions of 2 Comp. Laws, § 6290, regulating the making up of passenger trains, were intended to protect not only passengers but travelers on the highway, they have no application to a case where the engine was at the head of the train but was running backward.

Error to Saginaw; Gage, J. Submitted June 7, 1910. (Docket No. 14.) Decided September 27, 1910.

Case by William J. Morgan against the Pere Marquette Railroad Company for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Crane & Crane*, for appellant.

*Bills, Streeter & Parker*, for appellee.

BIRD, C. J. The plaintiff, William J. Morgan, commenced this suit against the defendant, Pere Marquette Railroad Company, to recover for injuries to his person and property which were incurred while he was driving on Michigan avenue, at a point where it crosses defendant's main track in the city of Saginaw.

The record discloses that Michigan avenue extends east and west and crosses defendant's main track at nearly right angles. Four hundred and ninety-three feet north of the place of the accident two spur tracks lead off from the main track, and extend in a southwesterly direction, and cross Michigan avenue upwards of 200 feet west of the intersection of Michigan avenue with the main track. Superior street extends north and south, parallel with, and contiguous to, the defendant's main line right of way. On the morning of March 23, 1906, at about the hour of 6 o'clock, plaintiff was traveling east over this highway with his horse and covered milk wagon. The wagon top was provided with glass front and sides and glass rolling doors. The weather was frosty and foggy, and there was a slight covering of snow on the ground. When he came

to the west spur, he brought his horse down to a slow walk, and looked and listened.   He neither saw nor heard anything, and he proceeded toward the second spur, 22 feet distant.   Here he took the same precaution.   Two hundred feet east was Superior street and the main track. When he reached Superior street, he brought his horse to a very slow walk and looked and listened.   He neither saw nor heard anything indicating an approaching train, and he proceeded on his way across the main track. While in the act of crossing, his horse and wagon were struck by a south-bound engine hauling five or six passenger cars filled with miners on the way to the mines.

The engine was backing up, with no headlight, and practically without a lookout, as the engineer testified that sitting in his cab he could not see the track over the coal on the tender.   The testimony further discloses that from 2½ to 3 feet west of the west rail of defendant's main track to the traveled portion of Superior street there was a dense growth of willows and underbrush from 2 to 12 feet high, which obstructed the view to the north for 48 feet before reaching the main track, and that for a distance of 200 feet west of the west line of Superior street the view to the north was more or less obstructed by the growth of willows and underbrush.   The collision killed the horse, demolished the wagon, and threw plaintiff a distance of 40 feet, breaking his leg and otherwise injuring him.   When the collision took place, the train was running from 18 to 20 miles an hour.   An ordinance of the city of Saginaw was introduced, providing a maximum speed of six miles an hour for trains in the city. Testimony was given that neither the whistle was sounded nor the bell rung as the engine approached the crossing.

The grounds of negligence relied upon by the plaintiff were as follows:

*First.* In permitting willows, bushes, and underbrush to grow upon the railroad right of way so as to obstruct the view of approaching trains.

*Second.* The failure of the engineer to sound the whistle and ring the bell.

*Third.* For exceeding the maximum speed limit fixed by the ordinance.

*Fourth.* For running the locomotive backwards with no lights displayed.

At the conclusion of the plaintiff's testimony, defendant's counsel moved the court to direct a verdict for the defendant for the reason that the plaintiff's testimony disclosed that he was guilty of contributory negligence. The court took this view of the testimony, and granted defendant's motion.

Defendant's counsel do not insist very strenuously that the company was not negligent in some of the ways pointed out by the plaintiff, but they contend that, even if defendant were negligent, the plaintiff so far contributed to his own injuries that he is precluded from recovering. It is contended by defendant that plaintiff was possessed of more than the average intelligence, and was familiar with the crossing and knew that the view to the north of the crossing was more or less obstructed, that he knew that there was an early morning train which ran over that part of the road conveying the miners to their work, and that it was not enough for plaintiff to look and listen. He should have stopped and looked and listened when within a reasonable distance from the crossing before attempting to go across. Ordinarily, when a traveler drives upon a railway track without stopping to listen, where his view is obstructed, and in consequence thereof he is injured, he is under the law guilty of contributory negligence, but the rule that he shall stop is not imperative under all circumstances. *Guggenheim* v. *Railway Co.*, 66 Mich. 150 (33 N. W. 161); *Richmond* v. *Railway Co.*, 87 Mich. 374 (49 N. W. 621).

Viewing plaintiff's conduct in connection with the surroundings and the conduct of the defendant in operating its train without a headlight or lookout, we are unable to say, as a matter of law, that plaintiff so far contributed to

his own injuries that it will preclude a recovery. The plaintiff testified, and his testimony is corroborated by two witnesses, that his horse was walking very slowly when he approached the main [crossing as well as the other crossings. He looked and listened at each of the crossings. He understood that a train ran in the early morning conveying the miners to their work, but he had never seen it at this crossing and was not expecting it. He also admits that he knew the conditions at the crossing. Plaintiff testifies that, when he approached the main crossing, he looked up and down Superior street, and listened, but saw no light, and, in fact, saw nothing indicating that a train was approaching. From this point he was 48 feet from the track. For this distance his view to the north was obstructed by the willows and underbrush. He had little reason to expect danger in going that distance.

We cannot say that reasonably prudent men would not do likewise under similar circumstances. Had there been no willows or underbrush on the right of way, he could have observed the train from his wagon before he reached the track. Had the engine been facing the direction in which it was going, and its headlight lighted, plaintiff might have seen the reflected light on the track in time to stop. Plaintiff had a right to assume that, if there were a train approaching, it would be operated in the usual and customary way; that is, that the customary warnings would be given and that a headlight would signal its approach. How far plaintiff was misled, if at all, by the failure of defendant to observe these customary methods of operation, we are unable to say. Therefore we think that the question of whether he should have stopped before attempting to go across was a proper question to submit to the jury, together with all the other facts and circumstances in connection with it. *Van Auken* v. *Railway Co.*, 96 Mich. 307 (55 N. W. 971, 22 L. R. A. 33).

Plaintiff insists that the defendant was guilty of gross

negligence in running its train through the city and across the streets with no headlight to warn travelers of its approach. Such a practice, to say the least, is an exceedingly dangerous one, and no excuse was offered by the defendant for so operating its train. On the trial, plaintiff's counsel insisted that operating the train in this manner was in violation of section 6290, 2 Comp. Laws. That section reads as follows:

" In forming a passenger train upon any railroad operated in this State, the engine shall be placed at the head of the train, and no baggage or freight car shall be placed in the rear of any passenger car; and any officer, agent or other employé who shall cause them to be so placed, or who shall knowingly suffer the same to be done, shall be deemed guilty of a misdemeanor and be punished accordingly."

The trial court held that this statute had no application to the facts in the case for the reason that the statute was passed for the protection of passengers only. We agree with the trial court that this statute has no application because the facts here disclose that the engine was attached at the head of the train. We are unable, however, to agree with the trial court that the statute was passed for the protection of passengers only. The beneficial effects of this statute to travelers upon the streets and highways are quite as apparent as they are to passengers. To require the engine to be placed at the head of the train would protect travelers at night, as the usual custom in the operation of trains is to place the headlight in front, and, if this were done, it would warn the travelers of its approach. In placing the engine at the head of the train, it would enable the engineer to command a better view of the travelers, and thereby enable him to afford them better protection against collision. Another reason which suggests itself is that the engine is provided with a pilot, which is specially designed to throw off at the side of the track, objects with which it comes in contact, instead of running over them, thereby in many instances preserving

human life.   This statute is a police regulation, and its protection should be extended to travelers upon the streets and highways as well as to passengers.   It will be unnecessary to determine whether this act of operation was gross negligence upon the part of the defendant, as we are of the opinion that the contributory negligence of the plaintiff should have been submitted to the jury upon the whole case.

There are other errors assigned, but, as plaintiff does not discuss them in his brief, no attention will be given them here.

The judgment is reversed, with costs, and a new trial ordered.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.