ROUSE *v.* BLAIR.

1. APPEAL AND ERROR — LAW OF CASE — FORMER APPEALS — RES JUDICATA.

   The determination on a former appeal that the evidence made a question for the jury is the law of the case on a subsequent trial where the testimony is substantially the same as on the first trial.

2. SAME.

   In an action for damages for personal injuries sustained in a collision between plaintiff's automobile and defendant's train at a crossing, the testimony was substantially the same as that presented on the first trial so as to render the determination on a former appeal that the evidence made a question for the jury the law of the case on the second trial, where the defendant offered no evidence on the first trial and called a large numbei of witnesses to establish its defense on the second trial and their testimony, if believed, would have warranted a judgment for defendant, but it related to questions within the realm of fact.

Error to Berrien; North, J., presiding. Submitted June 13, 1917. (Docket No. 39.) Decided September 27, 1917. Rehearing denied December 28, 1917.

Case by Elmer E. Rouse against Frank W. Blair and others, receivers of the Pere Marquette Railroad Company for personal injuries to himself, his wife, and child. Judgment for plaintiff. Defendants bring error. Affirmed.

*Parker, Shields & Brown* (*Gore & Harvey,* of counsel), for appellants.

*Cady & Andrews* (*Thomas J. Cavanaugh,* of counsel), for appellee.

MOORE, J. This is the second appearance of this case in this court. Upon the first trial in the circuit

court, after the plaintiff had put in his proofs, the judge directed a verdict in favor of the defendant. The case was brought to this court for review. *Rouse v. Blair*, 185 Mich. 632 (152 N. W. 204). A majority of the court were of the opinion that a directed verdict was error, and that plaintiff presented a case for the consideration of a jury. Upon the second trial in the circuit court after the plaintiff had closed his case defendant moved a directed verdict, which motion was overruled. The defendant then called upwards of 20 witnesses in its defense. At the conclusion of all the testimony a motion was again made by the defendant for a directed verdict. This motion was overruled, and the case was submitted to the jury in a charge, which covers nearly 14 pages of the printed record. After a few minutes the jury was recalled, and the record shows the following:

"*The Court:* I am very sorry to have had to disturb you in your deliberations, but after you had gone to your room I discovered upon checking up my notes that inadvertently I had overlooked one of the requests to charge, which I think is essential that it should be given to you in order that the charge, as a whole, may cover the law. You will remember that I said to you during the course of the charge that if you believed from the evidence that defendant's employees did not give the customary signals, and were negligent in running the train backward, at a high rate of speed, across the highway, and that this was the proximate cause of the injury, and the plaintiff did under the circumstances all that a reasonably prudent man would have done, and the injury would not have occurred had the defendant's employees been lawfully operating the train, then the plaintiff is entitled to recover.

"Now, I want to add to that this which I overlooked:

" 'The defendant company had a right to back its train across the highway crossing, but in so operating the train, defendant's employees were bound to be mindful of the manner and the

place of operating the train, and to exercise care commensurate with the extra danger, if any, to persons and property in the highway.'

"You will probably recall the charge went on as follows:

"'But, if you find that the whistle was blown and the bell rung, and there were men as lookouts on the flat car, or leading car, so called, as the train approached the crossing, and that the train was running at a reasonable speed under all circumstances, and that the train was properly managed by the train crew, then I charge you no negligence has been shown, and it will be your duty to render a verdict of "not guilty."'

"I think you will recall that comes between two portions of the charge."

The jury returned a verdict in favor of the plaintiff for $7,500. The defendants then made a motion for a new trial, alleging 18 reasons. In overruling this motion the judge expressed himself as follows:

"The matter is now before the court on the defendants' motion for new trial. Various reasons are assigned in support of this motion, but the two which are principally relied upon in the presentation of this matter are:

"(1) That the verdict is clearly against the weight of the evidence; and

"(2) The approximate cause of the injury was the negligence of the plaintiff, and therefore the court should have directed in favor of the defendants.

"This case was tried once before in the circuit court, and upon review in the Supreme Court it was held that the question of the plaintiff's contributory negligence was a question of fact which should have been submitted to the jury. I have had the assistance of somewhat lengthy arguments by counsel for the respective parties in an effort to ascertain whether or not there is any material variance between the records made at the second trial of this case and that made at the former trial so far as this phase of the litigation is concerned. I have also made a somewhat extensive investigation from the records furnished me by counsel

of the showing made as to this question at the respective trials. While it is true that the testimony was concluded at the first trial at the close of the plaintiff's case, and without the defendants offering their testimony, still I am of the opinion that there is not such a difference in the testimony found in the two records which is material and relevant to the plaintiff's contributory negligence as would justify the trial court in disregarding the former ruling of the Supreme Court to the effect that this is a question of fact to be submitted to the jury.

"I do not think it can be said as a matter of law that the amount of damages awarded is excessive, or that the verdict is contrary to the weight of the testimony in the case."

The case is brought here by writ of error.

The assignments of error are substantially the same as the reasons presented to the trial judge on the motion for a new trial. Upon the oral argument the assignments most dwelt upon were: (1) That the plaintiff's testimony in this record conclusively shows him to have been guilty of contributory negligence; (2) that no negligence on the part of the defendants was proven; (3) the weight of the evidence was so clearly in favor of the defendant that it was the duty of the trial court to so direct. The other assignments were not waived.

When the case was in this court before, Justice STONE, writing for a majority of the court, stated the claims of the parties with considerable detail. A reading of his opinion will make it unnecessary to write so long an opinion now as might otherwise be necessary.

It has been repeatedly held that the determination on a former appeal that the evidence made a question for the jury was the law of the case on a subsequent trial where the testimony was substantially the same as on the first trial. See *Foley* v. *Railway Co.*, 193 Mich. 233 (159 N. W. 506) ; *City of Sault Ste. Marie* v. *Railway Co.*, 192 Mich. 65 (158 N. W. 164) ; *Johnson*

v. *Surety Co.*, 194 Mich. 292 (160 N. W. 548) ; *In re Foerster's Estate*, 193 Mich. 440 (160 N. W. 459).

To meet the above counsel insist this record is different from the former one. We quote from the brief:

"We direct attention (1) to the material difference in the plaintiff's case upon this record from the plaintiff's case upon the former record, upon which the above decision was based; and (2) that this is the first time the testimony of the defendants' witnesses has been before this court. * * * *First*, then, of the difference in material facts between the plaintiff's proof upon this record and the former one:

"(*a*) The former record contained not one word to the effect that Mrs. Rouse, in explaining their conduct in getting in front of the moving train, stated in the presence of Norman E. Main, plaintiff's witness, that she 'saw smoke,' but she 'thought it came from an engine attached to cars upon the switch track.' This testimony is not only material; it is controlling. * * *

"(*b*) The former record failed to show such negligence on plaintiff's part as may be fairly deduced from the testimony of plaintiff's witness Henninger, who swears that as Rouse approached the crossing he saw two men, waving their arms and hallooing to Rouse to apprise him of the approach of the train and to stop his car."

Mrs. Rouse testified on her direct examination:

"*Q.* Did you attempt to look to the south?
"*A.* I watched; as we were coming along I watched over the cars that were there, watched for any possible show of smoke that might be a train coming that way.
"*Q.* Did you see any smoke there?
"*A.* No, sir."

On her cross-examination she testified that she had no recollection of saying anything in the presence of Mr. Main about smoke, and that she could not have said she saw smoke, for she did not see any. It is not claimed that Mr. Rouse said he saw smoke.

In the cross-examination of Mr. Henninger the following appears:

"I know F. L. Ackerman. I didn't see him there that day. I did not see him holding his hands up and waving at Rouse. I heard a number hallooing to Rouse to stop. I didn't call to him myself. He didn't seem to stop. I saw two or three people at the railroad track signaling Rouse to stop. They were waving their hands for him to stay back. I know where the railroad crossing sign is there between the scales and the railroad track. That is within 30 or 35 feet of the track. He (Rouse) was about in there when those men were waving at him. He didn't stop. I don't know how fast he was going.

"Q. You would know whether he was moving along 18 miles an hour or 4 miles an hour? Wouldn't you?

"A. Well, I don't know.

"Q. It appeared to you if he had seen those men that he had plenty of time to stop?

"A. Maybe he was so close he couldn't stop, something or other.

"Q. As it appeared to you?

"A. I didn't any more than see the auto and the collision took place."

Mr. Rouse testified on cross-examination:

"On the morning of the 19th, as I approached that crossing, I did not see some men holding up their hands and waving at me to stop.

"Q. What were you looking at?

"A. I saw no one except after I had seen the train, a man I believe is the station agent; he was waving his hands to stop when I had seen my danger and was endeavoring at that time to stop. I did not see a large man there near the track with both hands raised. I think I would if he had been there, but I did not see anybody. I was not in the least asleep that morning."

Counsel are so insistent in their briefs, and were in the oral argument, that a different case is presented now than was presented before, that we have gone over this long record with great care. We are quite convinced the case presented on the part of the plaintiff is substantially the same that was presented on the first trial. It is true that upon the second trial

defendant called a large number of witnesses to establish its defense. Their testimony, if believed by the jury, would have made a defense, but it related to · questions well within the realm of fact. Some of the testimony of some of the witnesses offered by the defendant must have afforded comfort to the attorneys for the plaintiff.

Much of the testimony was conflicting. The case was ably tried by zealous and capable counsel before a painstaking and careful judge, who endeavored to, and did, protect the rights of the respective parties.

Judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, and BIRD, JJ., concurred with MOORE, J.

BROOKE, J. The law of the case having been settled by the former opinion, I concur in the result.

STEERE and FELLOWS, JJ., concurred with BROOKE, J.