### DELAND *v.* MICHIGAN RAILWAY CO.

1. STREET RAILWAYS—CROSSING ACCIDENT—PERSONAL INJURIES— CONTRIBUTORY NEGLIGENCE — DEGREE OF CARE — QUESTION FOR JURY.

> In an action against a street railway company for injuries caused by a collision on a highway crossing between defendant's interurban car and the automobile in which plaintiff was riding, where the driver of the automobile had waited for the passing of one car and was struck by the second one going in the same direction, the question as to whether he had taken such precautions as a reasonably prudent and careful man would do, under like circumstances, *held,* under the testimony, one of fact for the jury.

2. SAME—TRIAL—INSTRUCTIONS—JURY.

> In said action, an instruction that the driver of the automobile was held to a lesser degree of care and precaution because a car had just passed, going in the same direction, *held,* to invade the province of the jury, and to amount to reversible error.

Error to Genesee; Black (Edward D.), J. Submitted October 12, 1920. (Docket No. 76.) Decided December 22, 1920.

Case by Helen E. Deland against the Michigan Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Weadock & Weadock (Carton, Roberts & Stewart,* of counsel), for appellant.

*George W. Cook,* for appellee.

STEERE, J. On Sunday, August 12, 1917, in the village of Mount Morris, Genesee county, plaintiff re-

On care required of driver of automobile at railroad crossing, see notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 294; 46 L. R. A. (N. S.) 702.

ceived serious injuries in a crossing collision between an automobile in which she was riding and one of defendant's interurban cars. The accident occurred at a point where defendant's line between Flint and Saginaw crosses at grade Morris street, which is the principal thoroughfare east and west through the village. At that point defendant's line runs in a northwesterly and southeasterly direction, making a slight curve to the west about 300 feet north of Morris street. Plaintiff resided with her family on a farm near Flushing, some 9 miles west of Mount Morris. On the afternoon of that Sunday she went riding in their automobile with her husband and son Ralph, a young man about 27 years of age, who sat in the front seat and drove the auto, she and her husband occupying the back seat. They had driven east from their home to and through the village of Mount Morris, along Morris street and some distance beyond. The accident occurred about 3 o'clock in the afternoon as they were driving back on Morris street towards their home. On the east side of defendant's track and north side of Morris street at this crossing is located the residence of Mr. John Eagan, called by witnesses the "Eagan house," which is 17 feet east of defendant's track and with its surrounding trees largely obscures the view of defendant's line on the north, to one driving west on Morris street, for a distance of approximately 80 feet easterly from the track—how completely is a matter much in dispute in this case.

As they approached the crossing from the east they saw on their right a south-bound interurban car of defendant coming when they were about 140 feet east of the track from where their view to the north was unobstructed. Ralph slowed down and stopped their automobile opposite the Eagan house at a point about 80 feet east of the crossing and waited until it passed, allowing his engine to run out of gear until he started

up again.  As soon as the interurban had passed the crossing and he noticed an automobile bound east which had waited west of the track start up and cross, he also started on, slowly at first, and had attained a speed of from 5 to 7 miles an hour when he reached the track, the interurban which had just passed being yet in sight to the south.  He testified that as he approached the crossing he looked both ways and listened, his automobile made no noise to prevent hearing, that his view to the north was obscured by the Eagan house and trees to the west of it, he heard no whistle, bell or sound of a coming car and saw no indication of another car following the one which had just passed.  He had shifted to second gear and just as he drove upon the track another south-bound interurban suddenly appeared close by, as though emerging from amongst the trees, as he and his mother describe its appearance to them, so near and running so fast that, before he could clear the track, it struck the rear of the automobile, wrecking it, seriously injuring plaintiff and killing her husband.  Though thrown out, dazed and bruised the son was not seriously injured.

It is conceded this was a dangerous crossing, particularly for those approaching it from the east, that no special safeguard was provided there to warn of approaching cars, and no warning bell or gong was sounded by the interurban as it approached.  The motorman testified that he whistled for the crossing at the whistling post, located 1,000 feet north of the crossing, which was disputed by the testimony of those in the highway on each side of the track, who testified that they listened for an approaching car from the north and heard no whistle or bell.  Mr. Hitchcock, who lived in Mount Morris and was familiar with the crossing, drove the automobile coming from the west, which waited on that side for the first car to pass, testified he heard it whistle, had a clear view to the north from his

side and could and did see it about 15 rods north of the crossing as he approached the track and checked down; that he knew another car was soon coming, as the second section of that train, and out of precaution looked to the north again and listened for it before he went across, but neither saw nor heard it whistle, had crossed the track, speeded up to about 10 miles an hour and gone but a short distance on the way when he heard the collision, stopped his auto and walked back, getting there just as they were carrying plaintiff into the Eagan house. It was shown that the interurban which struck the automobile was the second section of defendant's south-bound limited train No. 160 between Saginaw and Flint, which at that time ran in two sections of one car each about a mile apart between stations, at a speed of about 45 miles an hour.

Neither plaintiff nor those with her were familiar with this crossing or had any knowledge of defendant's trains being run in sections, or of when or how its cars were run. Mount Morris was not their market town. Ralph had not been over that highway or crossed defendant's track before that day or ever traveled as a passenger on its line. A map and photographs of the crossing and its environments were introduced, with testimony more or less conflicting as to whether a view of the track north of the crossing was entirely obscured between it and the Eagan house to one driving west on Morris street.

Plaintiff's alleged grounds of negligence are, in brief, absence of proper notice of the approach of the car at that point, failure of defendant to maintain there any gates, flagman, electric bell, or in any wise safeguard the crossing, negligence in speed and operation of a second car following so closely after another, at the place and under the circumstances shown.

While various errors are assigned with right of review preserved by motions, request for directed ver-

dict, etc., it is said in the briefs of both plaintiff's and defendant's counsel that there are but two controlling questions in the case which are stated in defendant's brief and repeated in plaintiff's as follows:

"*First*. Should verdict have been directed by the court for the defendant on the ground that the plaintiff and her driver were guilty of contributory negligence in the manner in which they approached the crossing on the day in question?

"*Second*. Did the court err in charging the jury that there was a lesser duty on the part of the plaintiff's driver of protecting himself against a second car upon the defendant's road because a car had just passed over the crossing from the same direction?"

Upon the first proposition defendant's counsel contend the undisputed testimony shows that plaintiff's driver did not stop, look and listen at a time and place where stopping, looking and listening would prove effective, in violation of the rule applied by this court as stated in *Cardinal* v. *Railway Co.*, 165 Mich. 155; *Measel* v. *Railway*, 166 Mich. 688; *Manos* v. *Railway*, 168 Mich. 155 (L. R. A. 1917C, 689) ; *Colborne* v. *Railway*, 177 Mich. 139; *Champaign* v. *Railway*, 181 Mich. 672; and other analogous cases. That such is the general rule there can be no question, and it is also well recognized that there are exceptions recognized in certain cases where the exculpating testimony nevertheless carries the question of contributory negligence to the jury as an issue of fact under proper instructions, some of which are as follows: *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Breckenfelder* v. *Railway Co.*, 79 Mich. 560; *Richmond* v. *Railway Co.*, 87 Mich. 374; *Coffee* v. *Railroad Co.*, 139 Mich. 378; *Hintz* v. *Railroad Co.*, 140 Mich. 565; *Barnum* v. *Railway Co.*, 148 Mich. 370; *Beck* v. *Railroad Co.*, 156 Mich. 252; *Morgan* v. *Railroad Co.*, 162 Mich. 573; *Rouse* v. *Blair*, 185 Mich. 632; *Halloran* v. *Railway Co.*, 197 Mich. 308;

*Nichols* v. *Railway Co.*, 203 Mich. 372; *Fillingham* v. *Railway Co.*, 207 Mich. 644.

According to plaintiff's testimony the driver did look and listen and saw a car coming when approaching the track, stopped for it to pass, and, discovering no indications of another car coming, proceeded listening and observing as best he could, until he was upon the track. Whether as the situation presented itself to him he made such observations and took such precautions as a reasonably prudent and careful man would do under like circumstances was, we think, made by the testimony a question of fact for the jury. As we are of the impression this case must be retried for the second reason urged, it is not deemed necessary or advisable to enter into further discussion of the testimony upon that issue of fact.

The court in overruling defendant's motion for a directed verdict said in the presence of the jury:

"The court thinks—it is his opinion, as a *matter of law*, that there is a little different rule of law would apply to plaintiff in driving his car after the other car had passed, not that plaintiff was to be excused from diligence on his part of protecting himself against cars upon defendant's road, but the court thinks there is a less duty, of a second train following, that way or a second car, than there would be had there not a car just passed."

In instructing the jury upon the question of negligence the court charged as follows in modifying one of defendant's requests:

"I add—the greater knowledge he had of the crossing the more care should be exercised, and particularly, if he knows, or has good reason to know that there are other trains approaching—'and whether or not just prior to his crossing such track there shall have passed a car on the same.'"

In modifying another request properly stating the applicable rule:

"I further charge you, as a matter of law, that under the facts of this case the driver of the car was held to—I have put in the word 'practically'—the same degree of care in approaching and going upon the track of defendant company as though no car had passed over that track and across said highway two or three minutes before the car that struck plaintiff reached it. In these days of rapid transportation the driver of the car had no right to assume that the first car he saw crossing said highway south-bound would not be followed closely by another going in the same direction— I add, 'but with lesser degree of care and precaution on his part.'"

In this added qualification the court invaded the province of the jury. While all the facts and circumstances attending the accident, including the fact that the driver had seen and waited for another car to pass, were proper matters for the jury to give such weight to as in their judgment seemed right in determining the question of negligence, an instruction that the recent passage of a car changed the rule as to the degree of care and vigilance required of one about to cross a railroad track was, we think, prejudicial error, particularly in a case of this nature where the issue upon the facts was close. The jury should have been instructed, in substance as requested, upon the unquestioned rule of law which they should apply to the facts found by them without the modification complained of.

For this reason the case must be reversed and a new trial granted, with costs to defendant.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.