# OCTOBER TERM, 1912.[*]

GOOD ROADS CONSTRUCTION CO. *v.* PORT HURON, ST. CLAIR & MARINE CITY RAILWAY CO.

1. HIGHWAYS AND STREETS — STEAM ROLLER—MOTOR VEHICLES— NEGLIGENCE—STATUTES—CONTRIBUTORY NEGLIGENCE.

    Violation of the statute requiring steam engines, etc., operated on the public highways to send ahead a person to give warning of the approach of the vehicle, etc., constitutes contributory negligence, preventing the recovery of damages for injury done to a steam roller in a collision at a crossing of defendant electric railway company. Act No. 71, Pub. Acts 1903. 2 How. Stat. [2d Ed.] § 4235 (amending 2 Comp. Laws, § 5543).

2. NEGLIGENCE—TRIAL—JURY—EVIDENCE.

    Except in case of a view of the premises by the jury, testimony relative to changes made at a crossing at which an accident occurred is inadmissible.[1]

3. TRIAL—MISCONDUCT OF COUNSEL—SAVING QUESTIONS FOR REVIEW.

    To review improper remarks of defendant's attorney on the trial of a negligence case, a request for a ruling or motion to reprimand counsel or take some other appropriate action is necessary.

4. NEGLIGENCE—NOTICE—PRIOR OCCURRENCES.

    It was not sufficient or competent evidence of notice to defendant that plaintiff's apparatus was liable to be caught and stop on the crossing so as to require the reduction of speed in running defendant's street cars, because on previous occasions the steam roller and other equipment had stopped on the tracks at the crossing and prevented the car from passing.

---

[*] Continued from Vol. 172.

[1] The authorities on the question of the admissibility of evidence of condition, before and after accident, of property whose defects are alleged to have caused injury, are collated in a note in 32 L. R. A. (N. S.) 1084.

5. Same—Gross Negligence.

The court correctly charged the jury that if they found defendant guilty of ordinary negligence only, not wilful or wanton and reckless conduct, their verdict must be for defendant, but that plaintiff might recover if defendant's motorman was guilty of gross negligence; that they might consider the testimony as to the distance at which the road roller could be seen by the motorman, the degree of curve in the track, the blowing of the whistle, the distance in which a car running 50 miles an hour could be stopped; that gross negligence meant intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and implied, also, thoughtless disregard of consequences, without the exercise of any effort to avoid them.

Error to St. Clair, McKay, J., presiding. Submitted October 17, 1912. (Docket No. 140.) Decided November 8, 1912.

Case by the Good Roads Construction Company against the Port Huron, St. Clair & Marine City Railway Company for damages to plaintiff's machinery and property. Judgment for defendant. Plaintiff brings error. Affirmed.

*Burt D. Cady* (*Clifford W. Crandall* and *Frank R. Schell*, of counsel), for appellant.

*P. H. Phillips* (*Joseph Walsh*, of counsel), for appellee.

Stone, J. This is an action to recover the value of the steam engine road roller belonging to the plaintiff, which it claims was struck and destroyed by a car of the defendant under the following circumstances:

On September 14, 1909, the defendant was engaged in operating an interurban railway from Marine City to the city of Port Huron. Said railway crossed a public highway, running nearly east and west, situated in the township of Port Huron, St. Clair county, being the first highway north of a certain stop known as Greenwood on said railway. The location of the crossing and the distance

from the center thereof to certain specified points along the said railway are shown on the annexed plan or diagram.

The plaintiff was engaged in the business of constructing gravel and macadam roads, and, at the date above mentioned, was constructing such a road at a hamlet called Marysville, located a short distance south of said crossing. It hauled its material by means of its engine road roller with four dirt wagons attached, making an outfit about 100 feet in length over all. This conveyance traveled along the highway at from 1½ to 2 miles an hour; that being its utmost speed. About 1 o'clock in the afternoon of the day in question, plaintiff's said engine road roller, with the four dirt wagons attached, approached said crossing from the east, in the sole charge of its engineer, one Saul Tice. He ran the engine up to within five or six feet of the east rail of the defendant's track, when he stopped. He got off the rear of the engine, and walked in the neighborhood of 25 or 30 feet to the track. He went forward, and stood in front of the engine. He was close enough to the east rail so that he got a good view of the track. He looked up and down the track, and could see beyond Greenwood on the south. He saw no car coming in either direction, and heard no whistle. He then walked back, got up on the engine, blew the whistle, and started the train ahead. When the front roller of the engine was on the west rail of the track, he saw a car coming from the south beyond Greenwood waiting room, about the time it came around a slight curve. He testified that he immediately blew his whistle, threw the reverse lever, and jumped out of the south side of the engine, and that defendant's car hit the engine about the time he landed from his jump. He testified that, when he first saw the car, it was so close to him that he did not have time to back his engine a sufficient distance to clear the track. The width of the space inside the track or rails was 4 feet 8½ inches, and the bearing on each rail was 2½ inches. It was conceded that the defendant's car was running at the rate of 50 miles an hour at the time it came around the curve, and also that for at least a third of a mile south of this crossing the defendant ran over its

private right of way. The car violently struck the road roller, throwing it a distance of 49 feet to the northeast, as indicated on the diagram. It was conceded at the trial that the road roller was practically demolished, and was, after the injury, of no value except for scrap iron. It appeared that plaintiff's engineer had been employed at said work for some months, and was familiar with the location of defendant's track and the crossing, and with the fact that both local and limited cars were frequently run over the line. The evidence showed that the motorman gave a whistle at about the same time the plaintiff's engineer sounded his whistle, and there was testimony that the motorman applied the air brake on the car. It being conceded that the car when it came in view was running at the rate of 50 miles an hour, it would travel about 74 feet a second, and the road roller's rate of speed would be from 2 to 3 feet per second.

The trial judge ruled, and instructed the jury, that the plaintiff was guilty of contributory negligence in attempting to cross the track in the manner in which it did, and in the handling of the outfit, and submitted to the jury the question whether the defendant was guilty of gross negligence in the operation of the car. It appeared that plaintiff's engineer was alone, and unattended by any other person in the operation of the roller and outfit.

Considering the length of plaintiff's outfit and its slow movement, it seems clear to us that the trial court did not err in holding that it was guilty of contributory negligence in the manner in which it attempted to cross the track. Our legislature has sought to protect the public in the use of vehicles or trains such as the plaintiff was operating. Our statute (see Act No. 71, Pub. Acts 1903, 2 How. Stat. [2d Ed.] § 4235), which regulates the use of steam engines, steam wagons, and other vehicles which are in whole or in part operated by steam on the public highways of this State, makes it unlawful to permit or use the same to pass over, through, or upon any public highway, road, or street, unless such owner or owners, agent, servant, or

employé shall send before the same a person of mature age at least 10 rods, and not more than 40 rods, in advance, to notify and warn persons traveling upon or using said highway or street with horses or domestic animals of the approach of such carriage, vehicle, or engine. Considering the time consumed by plaintiff's engineer in returning from the track, and getting upon and starting his engine, and also considering the rapidity with which the defendant's car was running, it is not strange that a collision took place which might have been avoided had the plaintiff exercised ordinary care and prudence by the use of a flagman or other precaution, as above indicated, or had he remained upon the engine and reversed the motion of the train, for it is undisputed that, when he first saw the car, it was from 700 to 800 feet away, and would require at least ten seconds to reach the crossing, whereas in two or three seconds the engineer could have backed his train off the track. But it may be said that the engineer had not time to act deliberately in this latter regard. However, it seems very clear to us that had he exercised the prudence and care which the circumstances required, by calling to his assistance persons to guard the track while he was crossing with his slow-moving outfit, not only would the plaintiff's property have been saved, but the life of the motorman also, which seems to have been sacrificed by the want of proper care and management on the part of the plaintiff.

The jury returned a verdict for defendant, and judgment was entered accordingly, and the plaintiff has brought the case here upon writ of error, assigning numerous errors to the rulings of the court, the refusals to charge, and the charge of the court.

It is the contention of the defendant that the evidence did not warrant the submission of the case to the jury upon the question of gross negligence of the defendant. We do not agree with this claim, and think the court did not err in submitting the question to the jury.

There are 33 assignments of error in the record, but ap-

pellant's counsel discuss the alleged errors under the following subheads:

(1) The refusal of the court to permit the plaintiff to show changes in the premises.

(2) Failure to reprove counsel for using improper language.

(3) Refusal to permit evidence of the narrow escape from prior collisions to be considered as tending to establish notice.

(4) Permitting defendant's assistant superintendent to testify that a curve is not a curve within the meaning of defendant's rules, and refusing to charge on this point as requested.

(5) Defendant's negligence.

(6) Alleged contributory negligence of plaintiff.

(7) Refusal to direct a verdict for plaintiff.

(8) Improper statement as to the elements of plaintiff's case.

(9) Gross negligence.

(10) Prejudicial repetition of the sentence: "Plaintiff cannot recover," and other like phrases.

1. Upon the first point it seems the plaintiff sought to show changes in the premises after the accident. Clearly this was immaterial, except perhaps in the event that the plaintiff had received an order from the court permitting the jury to view the scene of the accident. No direct request was made of the court for such view. If such request had been made and refused, error could not have been assigned thereon; the whole matter resting in the sound discretion of the court. *Dupuis* v. *Traction Co.*, 146 Mich. 151–162 (109 N. W. 413). We do not think there was any reversible error in the ruling of the court upon this subject.

2. Failure to reprove counsel for using improper language. This question arose in the cross-examination of the witness Charles A. Bailey, sworn on behalf of the plaintiff. In his direct examination it appeared that he went to the crossing with a Mr. Moore about an hour after the accident, and took some views upon the track, placing Mr.

Moore at the crossing while the witness went south. On his cross-examination he testified as follows:

"I made an observation about 30 feet south of the station (Greenwood station). This point is not shown on the map. I stopped there because it was the farthest point south I could have a perfect unobscured view of Mr. Moore standing on the crossing.

"Q. From that point you could see Mr. Moore on the crossing, but from any other point farther south it would be impossible to see, or else very difficult, is that true?

"A. Well, you could see the road roller further south, but I couldn't see Mr. Moore any further south, and that is the reason I did not go any farther.

"Defendant's Counsel: Now, if your honor please, I ask to have this answer as stated struck out, and I take exception to it. This man is not an ordinary witness. He is the head and shoulders of the company, a man experienced in law, and he knows that that answer to that question is improper, and I desire to take exception to it.

"Q. Now, I ask you to answer this question?

"Plaintiff's Counsel: I desire to take an exception. A. I did answer your question, that that is the farthest southern point I could see Mr. Moore.

"Plaintiff's Counsel: I desire to take exception to the statement of Mr. Walsh that this witness was the head beetler of this company, and that he was not an ordinary witness, and that he was experienced in law, as being improper; there being no evidence to support any such statement.

"Defendant's Counsel: Well, the jury will judge of that, I guess.

"Plaintiff's Counsel: And an exception to that remark."

It will be observed that the court was not called upon by motion, or otherwise, to either reprimand counsel, or take any other action, or make any ruling thereon. Under repeated decisions of this court, relating to remarks of counsel, such exceptions are of no validity. It is not necessary to cite our numerous decisions upon this point. Neither do we think the remark of counsel was of such a serious or prejudicial nature as is contended for by appellant.

3. Appellant next urges that the refusal of the court to permit the witness Tice to give testimony relative to some prior occurrences as tending to show notice to the defendant was error. There is some question whether the record discloses any ground for this exception. Objection was made by defendant's counsel to the question relating to such claimed prior occurrences on the ground that it was immaterial, and, even if it occurred, it would not be notice to the company to the extent claimed by the plaintiff. The ruling of the court was that the witness could not be examined as to the stopping of the car under the circumstances claimed for the purpose of fixing notice on the company. Counsel took no exception to this ruling. Counsel for plaintiff then proposed to show by the witness that on three different occasions a car did stop, and the court again held that this could not be shown for the purpose of fixing notice upon the company. No exception was taken to this ruling. Counsel for plaintiff then asked the court if he would be permitted to show that the company could stop and control their cars between the crossing and the curve. After a colloquy between the court and counsel the court stated:

"You may show that there was an obstruction on the track, and they did stop. If it is necessary in that particular, you may ask the witness if there was an obstruction on the track, and he will answer the question by yes or no, and ask him if they did stop the car before reaching the obstruction."

This latter statement by the court was excepted to by appellant, after which the witness proceeded to testify upon the subject. Was this evidence admissible as tending to show notice to the defendant? It is the position of appellant that the nature of these claimed occurrences was such as would likely lead to discussion and report to the company. We do not think that the cases cited by appellant sustain the position claimed. Where there are defects that have been of long standing, they have been allowed to be shown.

In *Smith* v. *Sherwood Township*, 62 Mich. 159 (28 N. W. 806), the action being one to recover damages because of a horse becoming frightened at a hole in the planks of a bridge, it was held that the plaintiff might show that it had existed for a considerable length of time; and this court held that evidence introduced showing instances of other horses shying at the hole tended to show that knowledge of such conditions was brought to the attention of the township authorities. A like question arose in *Moore* v. *City of Kalamazoo*, 109 Mich. 176 (66 N. W. 1089), which was an action against the city for injuries received by stepping into a hole in a defective sidewalk. Evidence that there were other defects in the immediate vicinity, and that other persons had stepped into the same hole in the walk, was held admissible as bearing upon the question of notice. We think the instant case can readily be distinguished from the cases cited. There was here no hole or obstruction which would be a continuing notice of the dangerous condition. The mere occurrence of the car having been stopped on prior occasions would not probably be of sufficient importance to be reported to the company, or cause any comment, or operate as a notice. Because this same plaintiff on a prior occasion was crossing the track of the defendant at this particular place with an equipment that was so imperfect as to cause its stoppage on the railroad crossing, it can hardly be said that because of that fact the defendant should be charged with notice, and therefore required to operate its cars along the stretch of track approaching this crossing at a decreased rate of speed for the reason that such condition was likely to recur. But, as we have already said, the testimony offered was received, but not used for the purposes of notice. Neither are we able to find that the court was requested to charge the jury upon that subject by the appellant.

4. It is claimed that there was error in permitting the defendant to explain the meaning of its rules by parol

evidence. The rule referred to was defendant's rule 295, reading as follows:

"Enter slowly all curves, special work, temporary tracks, subways and viaducts; run slowly over them and leave them slowly."

It is claimed by appellee that this rule did not apply to the running of interurban trains in the country, but related to the operation of its cars in the city of Detroit; the rule having been labeled "The Rules of the Detroit United Lines." The assistant superintendent testified that the defendant had curve signs at all curves that were designated curves, and that the slight curve shown upon the diagram here was not called a curve within the meaning of railroad terms, and within the meaning of the rules of the defendant. We think that the witness was here testifying to a fact as to the application of its rules to a certain condition. We think it was competent for him to state that it was not intended to limit the speed of cars while passing over this particular portion of the track, or any other portion where the deviation from a straight line was so slight. The witness did not attempt, as is claimed by appellant, to give the meaning of the word "curve," but was only stating its application to a portion of the road. The reason for the rule must be apparent. Its only purpose must have been, and is, to avoid the danger of high speed on such portions of the tracks as curve sufficiently to make fast running over them hazardous.

5. We have examined with care the remaining subheads and assignments or error relating to the requests of appellant to charge and the charge of the court. We find no reversible error in this branch of the case. While there is some confusion in the charge, yet it distinctly appears that the court submitted the case to the jury upon the subject of gross negligence. We think that the language of the court with reference to the definition and subject of gross negligence cannot justly be complained of by

the appellant. The court, among other things, charged the jury as follows:

"If, therefore, you find from the evidence that the defendant, if guilty of anything, was only guilty of ordinary negligence, and was not guilty of wilful or wanton and reckless conduct, your verdict should be for the defendant, as the rule is that, if the plaintiff is guilty of negligence contributing to the destruction of its property, it cannot recover unless the defendant was guilty of gross negligence, and, under the law of this State, it is contributory negligence for a person to propel and cross a railroad track with a traction steam road roller with a train of four wagons, in all 100 feet in length, and requiring some minutes to cross, without sending a man up and down the track to flag approaching cars. * * * Now, gentlemen, this is a question for you to determine from all the facts and circumstances in evidence in the case. You may consider the evidence in reference to the distance at which the road roller could be seen by the defendant company; the degree of the curve in the track; the blowing of the whistle; the distance in which a car can be stopped running at 50 miles an hour; the distance the car was from the steam roller when the defendant company anticipated, or should have anticipated, danger, and its ability or inability to avoid the collision after it anticipated, or should have anticipated, danger. So the plaintiff cannot recover in this case unless you find by the fair preponderance of the evidence, as above described to you, that injury occurred by reason of the gross negligence of the defendant. But it is not meant that the motorman must have actually intended to do the particular wrong complained of. By gross negligence is meant intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exercise of any effort to avoid them. Unless, therefore, you find from the evidence that the motorman after he saw plaintiff's steam roller upon the track, and when he had no reason to believe it would vacate the track, before the car would reach the highway crossing did nothing to prevent the collision, but ran on in reckless disregard of the consequences, you cannot find a verdict for the plaintiff, and must find for the defendant."

We are of opinion that the question of gross negligence

was here fairly submitted. *Labarge v. Railroad Co.,* 134 Mich. 139 (95 N. W. 1073); *Knickerbocker* v. *Railway Co.,* 167 Mich. 596 (133 N. W. 504).

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. KUHN, J., did not sit.